COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Huff and Senior Judge Clements
Argued at Chesapeake, Virginia


WINFRED BELL, S/K/A
  WINFRID BELL
                                                              MEMORANDUM OPINION[*] BY
v.        Record No. 1557-11-1                                JUDGE JEAN HARRISON CLEMENTS
                                                                    APRIL 10, 2012
COMMONWEALTH OF VIRGINIA


                        FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                                     Louis R. Lerner, Judge

                Charles E. Haden for appellant.

                Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T.
                Cuccinelli, II, Attorney General, on brief), for appellee.


        Winfred Bell appeals his conviction of assault and battery of a law enforcement officer in

violation of Code § 18.2-57(C).[1]  Bell argues the evidence was insufficient to support the conviction

because he accidentally, and not intentionally, hit Trooper Ferguson's cruiser.  We disagree and

affirm the conviction.

        As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as necessary to the parties' understanding of the disposition of this

appeal.

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Bell was also convicted of felony evade and elude, and he claimed no error related to
that conviction.

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence proved that at approximately 9:00 a.m. on September 5, 2010, Officer George Wilson, of the Virginia Department of Game and Inland Fisheries, was driving east on Interstate 64 in the City of Newport News. While looking in his rearview mirror, Wilson noticed a car swerving in the lane and Wilson moved to the right lane to permit the car to pass. Bell was later identified as the driver of the swerving car. Bell swerved his car towards Wilson's patrol vehicle, and Wilson had to move to the right to avoid being struck. Wilson pulled behind Bell, activated his emergency lights and siren, and attempted to make a traffic stop. Bell did not stop. According to Wilson's GPS, Bell was driving between seventy and eighty-five miles per hour in a fifty-five mile-per-hour zone. Wilson asked a dispatcher to notify the state police for assistance.

Bell continued to drive erratically, and while in the far left lane, Bell swerved towards a jersey barrier. As Bell crossed the Hampton city line, four state police cruisers and an officer on a motorcycle joined the pursuit. State Troopers Bethea, Mobley, White, and Ferguson were driving the police cruisers.

Bethea testified he saw Bell's car rocking back and forth and Bell appeared to be waving his right arm as he drove. Bell nearly hit a disabled vehicle on the right shoulder of the interstate. The troopers made several attempts to box in Bell, but Bell would slow down or speed up, and the troopers were unable to box him in. During one attempt to box in Bell, Bell struck the front of Mobley's cruiser as Bell passed in front of Mobley. After striking Mobley's cruiser, Bell did not stop and he briefly lost control of his car. According to Bethea, Bell's car "struck the jersey wall hard and spun out" before Bell's car came to a stop in the left lane. As the troopers started to exit their cruisers, Bell resumed driving eastbound and he continued to weave in the lanes. The troopers again attempted to box in Bell near the Hampton River overpass. Bethea testified Ferguson was in

- 2 -

front of Bell, and Ferguson slowed down to approximately sixty miles per hour.  Bethea testified Bell "went out to the right.  And then it looked like he lost control of the vehicle and he came back and T-boned Trooper Ferguson's car," causing Ferguson's cruiser to spin and hit the jersey wall.  Bell then backed into Wilson's cruiser, which was directly behind Bell's car.  After striking Ferguson's cruiser, the thirteen-mile pursuit ended.  Bethea's cruiser had a dashboard video camera, and the video of the incident was admitted into evidence.

Ferguson testified he joined the pursuit and he went to the front of Bell's car in an attempt to slow him.  Ferguson testified as he approached the Hampton River Bridge, Bell came around him and hit the back right side of his cruiser, which caused him to hit the jersey wall.  Ferguson testified his vehicle spun 180 degrees before coming to a stop.  Ferguson suffered injuries as a result of the collision.  When the troopers took Bell into custody, he was uncooperative, fighting, kicking, spitting, and cursing.  Photographs of Ferguson's cruiser were admitted into evidence.

During the motion to strike, Bell argued that he lost control of his car and he did not intentionally hit Ferguson's cruiser.  The prosecutor responded the video showed Bell hit the jersey wall several times, but he regained control of his car and the car suddenly jerked, turned, and T-boned Ferguson's cruiser.  The prosecutor also argued Bell's failure to stop after hitting Mobley's cruiser and his erratic driving at a high rate of speed showed his intent "to hit somebody or something."  The trial court denied Bell's motion to strike, citing the "totality of the video."

"To sustain a conviction for assault, the evidence need only prove '"an attempt or offer, with force and violence, to do some bodily hurt to another."'"  Adams v. Commonwealth, 33 Va. App. 463, 468, 534 S.E.2d 347, 350 (2000) (quoting Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955)).  "An assault requires an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do physical injury to the

- 3 -

person of another." Zimmerman v. Commonwealth, 266 Va. 384, 387, 585 S.E.2d 538, 539 (2003).

> When the injury is actually inflicted, a battery has been committed regardless of how small the injury might be. "'Battery is the *actual infliction of corporal hurt* on another (e.g., the *least touching* of another's person), *willfully or in anger*, whether by the party's own hand, or by some means set in motion by him.'"

Seegars v. Commonwealth, 18 Va. App. 641, 644-45, 445 S.E.2d 720, 722 (1994) (quoting Jones v. Commonwealth, 184 Va. 679, 682, 36 S.E.2d 571, 572 (1946)) (emphasis in original).

A defendant's "'intent must be determined from the outward manifestation of his actions leading to usual and natural results, under the peculiar facts and circumstances disclosed. This determination presents a factual question which lies peculiarly within the province of the [trier of fact].'" Hughes v. Commonwealth, 18 Va. App. 510, 519, 446 S.E.2d 451, 457 (1994) (*en banc*) (quoting Ingram v. Commonwealth, 192 Va. 794, 801-02, 66 S.E.2d 846, 849 (1951)).

> Proving intent by direct evidence often is impossible. Like any other element of a crime, it may be proved by circumstantial evidence, as long as such evidence excludes all reasonable hypotheses of innocence flowing from it. Circumstantial evidence of intent may include the conduct and statements of the alleged offender, and "[t]he finder of fact may infer that [he] intends the natural and probable consequences of his acts."

Adams, 33 Va. App. at 471, 534 S.E.2d at 351 (quoting Campbell v. Commonwealth, 12 Va. App. 476, 484, 405 S.E.2d 1, 4 (1991) (*en banc*)).

In Luck v. Commonwealth, 32 Va. App. 827, 531 S.E.2d 41 (2000), the defendant was driving erratically and above the posted speed limit, and he failed to stop after an officer activated his emergency lights. Id. at 830, 531 S.E.2d at 42. Four or five officers joined the pursuit. They pursued the defendant for sixteen miles and the officers attempted to establish a rolling roadblock to slow the defendant, but the defendant steered into the officers' lane and forced the officers into oncoming traffic. Id. Eventually, an officer got in front of the defendant and the officer began the

rolling roadblock, but the defendant accelerated, rammed the officer's vehicle, and maneuvered back in front. The officer again tried to pass the defendant, but when he came alongside, the defendant steered into the police vehicle, locking the vehicles together. The officer hit his breaks, the vehicles separated, and the defendant lost control of his car and stopped only after he crashed. Id. at 830-31, 531 S.E.2d at 42. In affirming the defendant's conviction of malicious wounding of the officers, this Court reviewed the manner in which the defendant drove and found the fact finder could draw the reasonable and justified inference that the defendant possessed the requisite intent. Id. at 832-33, 531 S.E.2d at 43.

In finding the evidence sufficient to prove assault and battery of a law enforcement officer, the trial court assessed the testimony of the witnesses and the video of the incident. The trial court specifically relied upon the video of the incident. During the thirteen-mile pursuit, Bell varied his speed and swerved from lane to lane to avoid the troopers. After hitting Mobley's cruiser, Bell did not stop, but he continued to drive erratically and above the speed limit. The troopers attempted rolling roadblocks, but Bell would change speed and lanes in order to avoid the rolling roadblocks. As Bell swerved from lane to lane, he appeared to be waving at the troopers. As Ferguson drove next to Bell's car, Bell swerved and hit the back side of Ferguson's cruiser, causing Ferguson to hit the jersey wall. After the pursuit ended, Bell was uncooperative. Based upon a review of the circumstances in this case, there was sufficient evidence for the fact finder to infer that Bell intentionally, and not accidently, hit Ferguson's cruiser. Accordingly, we affirm the trial court's decision.

Affirmed.